Stanley Grabias and Mary Grabias v. Commissioner. Stanley Grabias v. Commissioner.
Grabias v. Commissioner
Docket Nos. 48172, 51049.
United States Tax Court
T.C. Memo 1955-255; 1955 Tax Ct. Memo LEXIS 80; 14 T.C.M. (CCH) 1015; T.C.M. (RIA) 55255; September 16, 1955
Albert S. Herskowitz, Esq., for the petitioners. Edward Pesin, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent has determined deficiencies in the income tax of the petitioners and additions to tax under section 293(a) of the Internal Revenue Code of 1939 as follows: Addition
Docket No.
Year
Deficiency
to tax
Stanley Grabias
51049
1946
$4,432.04
$221.60
1947
7,604.85
380.24
Stanley Grabias and
48172
1948
1,944.42
97.22
Mary Grabias
1949
1,302.22
65.11
*81 The issues presented for determination by the pleadings are whether the respondent erred (1) in determining that petitioner, Stanley Grabias, had taxable income for 1946 and 1947, respectively, in excess of the amounts reported by him in his income tax returns for those years and that petitioners, Stanley Grabias and Mary Grabias, had income for 1948 and 1949, respectively, in excess of the amounts reported by them in their returns for such years, (2) in determining that the living expenses of the petitioners were $4,000 a year for each of the years 1946 through 1949, (3) in determining that the petitioners are liable for the additions to tax for 1946, 1947, 1948 and 1949, provided in section 293(a) of the Internal Revenue Code of 1939 for negligence, (4) in determining that assessment of the deficiencies in tax and additions to tax for 1946 and 1947 is not barred by the expiration of the applicable periods of limitation, and (5) in disallowing for each of the years 1946 through 1949 a portion of the deductions taken for depreciation. At the hearing the petitioners abandoned issue (5). Findings of Fact Some of the facts have been stipulated and are found accordingly. The petitioners *82 are husband and wife and reside in Philadelphia, Pennsylvania. For 1946 and 1947, Stanley Grabias, sometimes hereinafter referred to as petitioner, filed separate income tax returns. For 1948 and 1949, Stanley and Mary Grabias, sometimes hereinafter referred to as petitioners, filed joint income tax returns. All the foregoing returns were filed with the collector at Philadelphia, Pennsylvania. Petitioner was born in Philadelphia, Pennsylvania, in 1916 of parents who were born in Poland. Petitioner's father, Lawrence Grabias, came to the United States from Poland about 1912 and during the year of his arrival entered the employment of Baldwin Locomotive Corporation, sometimes hereinafter referred to as Baldwin. During the spring of 1921 Lawrence and his family returned to Poland to live. In 1923 he sold a farm he owned in Poland for $14,000 and received payment therefor in American currency. Thereafter and in the fall of 1923 he returned to the United States where he continued to live until his death on August 11, 1947. Except for the above-mentioned period during the years 1921 to 1923 while he was in Poland, Baldwin was his sole employer from 1912 until 1946. During 1946 and until *83 his death in 1947 he participated in the conduct of a bar and grill business conducted by petitioner and hereinafter referred to more fully. In November 1923, shortly after the return of the family from Poland, petitioner's mother died. At some undisclosed time prior to 1946 Lawrence remarried. In 1943 Lawrence Grabias loaned $5,000 to his brother-in-law, Michael Dorosz, for use in establishing himself in business in Canada. Dorosz repaid the loan in full in 1946. During the years 1937 through 1946 Lawrence received from Baldwin total compensation in the amount of $24,500.82. He did not file a Federal income tax return for the years prior to 1941. For the years 1941 through 1945 he filed returns and paid income taxes in the total amount of $1,786.87. The estate left by him consisted of his home and the furnishings therein. About 1936 the petitioner entered the employment of Westinghouse Electric Manufacturing Company, sometimes hereinafter referred to as Westinghouse, in Essington, Pennsylvania, as an apprentice. Later he became a machinist and subsequently an instructor. He left the employment of Westinghouse in 1945. His only source of income during this period was his salary *84 from Westinghouse and the highest salary received was $8,250 in 1944. During 1945 his salary from Westinghouse was approximately $5,800 or $5,900. The petitioners were married in 1938 while Stanley still was an apprentice. In December 1941 a son was born to them and in September 1949 another son was born. The petitioner has a younger brother, Edward Grabias, who entered the armed service in August 1943. During the summer or fall of 1945 and while still in the service, he was injured and as a result was hospitalized with the loss of a leg. On several occasions during his hospitalization he returned to his home on leave. He was finally discharged from the hospital in October 1946. Upon his discharge from the hospital he returned home and lived with his father and stepmother. On June 5, 1946, he received $40,000 from the British Steamship Company on account of his injury and resulting disability. In addition, he also has received from the United States Government a pension ranging from about $150 a month to approximately $190 a month. After his discharge from the hospital in October 1946 he began working in the petitioner's bar and grill but because of his disability discontinued *85 it after three or four months. In 1943 the petitioner purchased a dwelling house on Janson Street in Essington at a cost of $4,500 on which he placed a purchase money mortgage of $4,000. By the summer of 1945 he had reduced the amount of the mortgage to $2,500. The petitioner lived in the house from the time he acquired it until 1946. On November 15, 1945, the petitioner entered into an agreement to buy the land and building situated at 7925 Bartram Avenue in Philadelphia at the price of $20,000. Formerly a bar business had been conducted on the premises. On December 10, 1945, the petitioner began the conduct of a bar and grill business on the first floor of the building which he has continued to operate. Settlement and payment for the land and building were made on February 19, 1946, and since shortly thereafter the petitioner and his family have had their living quarters on the second floor which contains eleven rooms. In determining the deficiencies involved herein the respondent determined that for the years 1946 and 1947 the petitioner had net income in the amounts of $13,053.65 and $17,958.82, respectively, in addition to the amounts reported by him for the respective years *86 and that for the years 1948 and 1949 petitioner and Mary Grabias had net income in the amounts of $8,789.30 and $6,284.24, respectively, in addition to the amounts reported by them for such years, respectively. The respondent's determinations as to additional income were arrived at by the use of the net worth and cash expenditures method in which an amount of $4,000 a year for each of the years in question was included for the personal living expenses of the petitioners. The parties have stipulated that as of January 1 of each of the years 1946 through 1950 the petitioner owned the following indicated assets and had the indicated liabilities: ASSETS
1/1/46
1/1/47
1/1/48
1/1/49
1/1/50
Savings Account -
Philadelphia
Saving Fund
$8,160.00
$ 160.00
$ 1,260.00
$ 1,260.00
$ 5,037.60
Society
Land, Building,
21,500.00
21,500.00
21,500.00
21,500.00
License, Etc.
Building
10,993.00
10,993.00
10,993.00
Improvements
Shuffleboard
529.00
529.00
529.00
Television Set
477.60
477.60
477.60
Janson Street
4,500.00
4,500.00
4,500.00
4,500.00
4,500.00
Property
Automobile
1,083.75
Checking Account
4,922.48
14,378.92
10,673.91
Cash on Hand
500.00
Savings Account -
Delaware Coun-
ty National Bank
5,000.00
Household
2,046.50
Furnishings
LIABILITIES
Mortgage Payable -
Janson Street
Property
$2,500.00
$2,500.00
Loan Payable to
2,600.00
2,600.00
$2,600.00
Edward Grabias
*87 In addition to the above-mentioned assets the petitioner on January 1, 1946, owned United States Government bonds which had cost him $2,000. The money used by petitioner in making payment of the purchase price of the Bartram Avenue property, $20,000, was obtained from the following sources: $8,000 from the savings account of the petitioner, $2,000 from the redemption of the above-mentioned Government bonds, $5,000 from Lawrence Grabias, his father, representing a gift to petitioner, and $5,000 from Andrew Dorosh, representing a loan to petitioner. The loan from Dorosh was obtained in February 1946 and was repaid by petitioner in December 1946 with money given him by his father for that purpose. Petitioner's father also gave him during 1946 $1,550 which petitioner used to pay for repairs and improvements to the property. During 1947 the petitioner's father gave him $9,500 which the petitioner used in making improvements to the property and in purchasing a shuffleboard and television set used in the business. Rev. Bernard A. Shimkus gave petitioner $1,200 in 1948 and $800 in 1949 to hold for him and to return to him on demand. Upon receipt of those sums the petitioner deposited them *88 with his funds in his bank account. With the exception of $300 which was returned in 1950 pursuant to request therefor, the petitioner has continued to hold the foregoing sums. The income tax returns of the petitioners for the indicated years show the following: Total receipts
Net profit
from bar
from bar
Total
Net income
Total
Year
and grill
and grill
rents
from rents
income
Tax
1946
$21,666.88
$5,269.85
$450.00
$260.00
$5,529.85
$ 632.65
1947
38,174.26
7,190.67
600.00
410.00
7,600.67
1,125.40
1948
38,255.20
7,041.84
600.00
349.00
7,390.84
774.16
1949
38,175.60
8,116.86
600.00
347.00
8,463.86
679.98
In their income tax returns for the indicated years the petitioners took deductions in the following amounts for the personal purposes indicated: City and
state
liquor
Auto
and
Medical
tags,
amusement
Personal
and dental
Year
Contributions
license
taxes
taxes
expenses
Total
1946
$450.00
$25.00
$18.00
$ 493.00
1947
895.00
11.00
25.00
931.00
1948
880.00
11.00
44.10
935.10
1949
833.00
72.50
$65.00
$981.81 *
1,952.31
*89 The second floor of the building in which the petitioner conducts his bar and grill business was in a state of disrepair at the time the building was acquired. Before it could be occupied by petitioner and his family the window sashes had to be replaced and the rooms had to be repapered and painted. The petitioner personally did the painting. In 1949 the petitioner installed a kitchen on the second floor at a cost of from $500 to $1,000. The petitioner's son who was born in 1941 entered school in 1947 and continued in school during 1948 and 1949. Mary Grabias was hospitalized with the birth of her second child in September 1949. Beginning on October 1, 1949, the petitioner was hospitalized for six weeks on account of a strained heart. The personal living expenses of the petitioners were $2,500 in 1946, $3,000 in 1947, and $3,000 in 1948. The income tax returns of the petitioner for 1946 and 1947 were filed on February 28, 1947 and January 30, 1948, respectively. A consent dated February 21, 1952, was executed by petitioner and the respondent extending the period for the assessment of tax for 1946 to June 30, 1953. The deficiency *90 notice involving the years 1946 and 1947 was mailed to the petitioner on February 24, 1953. The deficiency notice involving the years 1948 and 1949 was mailed to petitioner and Mary Grabias on February 24, 1953. Opinion The first issue involves the respondent's action in determining that during the years 1946 through 1949, the petitioners had additional and unreported net income as set out in our findings. The petitioners suggest that the respondent erred in employing the net worth and cash expenditures method in determining their income and their tax liability for the years in question. The books of the petitioners were not offered in evidence, nor did the petitioners submit any evidence respecting the contents, adequacy, or correctness of their books. In view of the foregoing, and since there is nothing of record to indicate that the books correctly reflected the income of the petitioners, there is no basis upon which to conclude that the respondent erred in employing the net worth and cash expenditures method in determining the net income of the petitioners. The record does not contain the net worth and cash expenditures statements, or a copy thereof, prepared by respondent *91 in determining the amounts of the unreported income in controversy. However, the parties have stipulated that the petitioner owned certain specified assets on January 1 of the years 1946 through 1950 and owed certain stated liabilities on such dates as set out in our findings of fact. The petitioner contends that, in addition to the assets as stipulated to, on January 1, 1946, he owned United States Government bonds of a cost of $2,000, which were redeemed and the proceeds used in making payment of the purchase price of the Bartram Avenue property. The evidence sustains the contention of the petitioner, and we have found as a fact that the petitioner owned the bonds in question on January 1, 1946. The petitioner also contends that, in addition to the liabilities as stipulated to, he had a liability to Rev. Bernard A. Shimkus of $1,200 on January 1, 1949, and $2,000 on January 1, 1950, on account of demand deposits made with him by Rev. Shimkus. The latter, as well as the petitioner, testified with respect to the deposits and, on the basis of their testimony, we have found as a fact that the deposits were made and that petitioner was liable to make repayment on demand. This contention *92 of the petitioner is sustained. The petitioner further contends that substantial portions of the increases in his net worth for the years 1946 and 1947 resulted from cash gifts made to him by his father during the respective years and that the amounts of additional net income determined by respondent for such years should be reduced accordingly. The respondent takes the position that the evidence fails to establish that any such gifts were made and urges that on the basis of the evidence presented it was highly improbable that the petitioner's father in those years had sufficient cash resources with which to make gifts to petitioner in any substantial amount. After a careful consideration of the evidence bearing on the financial condition of the father and on the question of whether the gifts in controversy were made, we have concluded and found as a fact that gifts were made in the respective years and were in the amounts set out in our findings. At the hearing the petitioners took the position that their personal living expenses were about $20 a week or $1,040 a year for each of the years 1946 through 1949. As we understand their contentions on brief, their present position is *93 that their personal living expenses did not exceed their personal exemptions for the respective years, namely, $1,500 a year in 1946 and 1947, $1,800 in 1948 and $2,400 in 1949. The respondent contends that the petitioners have failed to show that their living expenses were less than $4,000 a year as determined by him for each of the years. In our opinion, the record justified the conclusion that the living expenses of the petitioners were $2,500 in 1946 and $3,000 a year for each of the years 1947 and 1948, and we have so found as a fact. From a consideration of the evidence relating to 1949, we are of the opinion that the record amply sustains the respondent's determination that the personal living expenses for that year were $4,000. Accordingly, his action with respect to that year is sustained. The respondent has determined that for all of the years in controversy the petitioners are liable for the additions to the tax imposed by section 293(a) of the 1939 Code for negligence in the preparation of their returns. Aside from showing that their returns were prepared by a firm of accountants from data submitted to them by petitioners, the petitioners have furnished us with no evidence *94 respecting the preparation of the returns or the reason for the failure of the returns to show the correct income of the petitioners for the respective years. Under these circumstances the respondent's determinations of the additions to tax must be sustained because of failure of proof to show error. The remaining question relates to the limitations on assessment of deficiencies in tax and additions to tax for 1946 and 1947. The deficiency notice as to those years was mailed to petitioner February 24, 1953. Section 275(a) of the 1939 Code provides a period of three years after the return was filed within which assessment of tax can be made. Section 275(c) of the 1939 Code provides a period of five years after the return was filed within which assessment can be made if the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per cent of the amount of the gross income stated in the return. Section 275(f) provides that for the purposes of subsections (a) and (c) a return filed before the last day prescribed by law for the filing thereof shall be considered as filed on such last day. Section 276(b) of the 1939 Code provides that, where before *95 the expiration of the time prescribed in section 275 for the assessment of the tax, both the Commissioner and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The petitioner's returns for 1946 and 1947 were filed on February 28, 1947 and January 30, 1948, respectively. Since the returns were filed on a calendar year basis and the last day prescribed by law for filing such returns was March 15 following the close of the respective years, the latter date, under the provisions of section 275(f), is to be considered as the date on which they were filed. Thus, for present purposes, the return for 1946 is to be considered as having been filed on March 15, 1947, and that for 1947 on March 15, 1948. Clearly, the 3-year period provided by section 275(a) had expired on February 24, 1953, as to both years, and the 5-year period provided in section 275(c) had expired as to 1946 unless a consent had been entered into by the petitioner and the Commissioner with respect to that year. So far as appears, no consent was entered into with respect to the year 1947 and the respondent makes no *96 contention that there was. However, a consent dated February 21, 1952, was entered into by the petitioner and the Commissioner extending the period for the assessment of tax for 1946 to June 30, 1953. If a recomputation of the income tax of the petitioner pursuant to our findings of fact and holdings herein discloses that the petitioner omitted from gross income for 1946 and 1947 amounts properly includible therein which are in excess of 25 per cent of the amounts of gross income stated in his returns for those years, then the 5-year period provided by section 275(c) within which assessment of tax for 1946 and 1947 can be made is applicable. Otherwise, the 5-year period in inapplicable and the assessment of tax and additions to tax for those years is barred. Decisions will be entered under Rule 50. Footnotes
*. Total medical expenses were shown as $1,405.↩